IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER CORMIER, WANDA WILLIAMS, DENISE CLARK, CINDY LOU FIGLE, AMY BRYANT AND TIFFANY CREGGER, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-0158-CG-M |
| ACAC INC., d/b/a APPROVED CASH ADVANCE, APPROVED CASH, QUIK CASH, A DOLLAR CASH ADVANCE AND MAIN STREET PERSONAL FINANCE, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the court on the plaintiffs' (Jennifer Cormier, Wanda Williams, Denise Clark, Cindy Lou Figle, Amy Bryant, and Tiffany Cregger, collectively, "plaintiffs") motion for attorneys' fees (Doc. 59), the defendants', ACAC, Inc. and Main Street Personal Finance, (collectively, "defendants"), response in opposition (Doc. 61) and the plaintiffs' reply (Doc. 62). For the reasons set forth herein, the plaintiffs' motion for attorneys' fees is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The plaintiffs filed a complaint against the defendants on April 1, 2013, seeking unpaid wages, overtime wages, attorneys' fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"). (Doc. 1). Stephen Tunstall

("Tunstall") of Mobile, Alabama, Rex Slate ("Slate") and Dawn Stith Evans ("Evans") of Guin, Stokes & Evans, LLC in Birmingham, Alabama, and Rocco Calamusa ("Calamusa") and Kevin Jent ("Jent") of Wiggins, Childs, Quinn & Pantazis, LLC in Birmingham, Alabama represented the six plaintiffs. In response to the defendants' motion to dismiss (Doc. 32), the plaintiffs amended their complaint on May 20, 2013 to set forth a single claim for unpaid overtime. (Doc. 19).

The defendants submitted offers of judgment to each plaintiff providing them with full relief including their alleged overtime compensation, liquidated damages and interest as a well as attorneys' fees, cost and expenses by which the court deems reasonable. (Doc. 61 at 3-4). The offers of judgment together totaled approximately $167,407.80. (Doc. 62 at 2). The defendants filed motions to approve the plaintiffs' acceptances of the offers of judgment on August 8, 2013. (Docs. 44-49). The plaintiffs now seek $66,754.25 in attorneys' fees and $696.21 in damages.[1]

## ANALYSIS

**A. Calculating attorneys' fees**

"The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action." 29 U.S.C. § 216(b). The first thing courts determine when calculating attorneys' fees is the "lodestar" figure, which is the "product of the number of hours reasonably expended to prosecute the lawsuit multiplied by a reasonable hourly rate for work performed by similarly situated attorneys in the

---

[1] The plaintiffs claimed $1,603.28 in damages in their motion for attorneys' fees, however, in their reply brief they agreed to accept the amount of $696.21 that they previously submitted in their bill of cost instead. See Doc. 62 at 13.

community." McDonald v. ST Aerospace Mobile, Inc., 2013 WL 1389976, *2 (S.D. Ala. April 4, 2013) (citing Hensley v. Echerhart, 461 U.S. 424, 433 (1983)); see also Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The party seeking the attorneys' fees bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. Once the lodestar fee is determined, the court analyzes whether any portion of this fee should be adjusted upward or downwards. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565-66 (1986); see also Pennsylvania v. Delaware Valley Citizens' council for Clean Air, 483 U.S. 771 (1987); Hensley, 461 U.S. at 433-34. The court may calculate the award based on its own experience, knowledge and observations when the rates or hours claimed seem excessive or lack appropriate documentation. Norman, 836 F.2d at 1299.

In making the above determination, the 12 factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) may "be considered in terms of their influence on the lodestar amount." Norman, 836 F.2d at 1299; see Blanchard v. Bergeron, 489 U.S. 87, 91-92 (1989); Hensley, 461 U.S. at 434 n. 9. These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstance; (8) the amount involved and the results obtained; (9) the experiences, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

3

Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n. 2 (11th Cir. 2008) (citing Johnson, 488 F.2d at 717-19) (quotation marks omitted).

Plaintiffs' counsel asserts that the total fees and expenses incurred up through the offers of judgment are $66,754.25, representing 241.89 total work hours at a rate of $125/hour for paralegal services, $400/hour for Calamusa's time and $325/hour for Jent's, Tunstall's, Evans' and Slate's time. In support of this request, the plaintiffs submitted: (1) the affidavit of Calamusa; (2) itemized records of expenses and services provided and time expended by plaintiffs' counsel in this action, and; (3) the affidavit of Tunstall.

**1. Reasonable hourly rates**

"The Eleventh Circuit has instructed that a reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.'" McDonald, 2013 WL 1389976, *3 (citing Norman, 836 F.2d at 1303). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (citing Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994). However, "[i]f the fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437. The fee applicant "bears the burden of producing satisfactory evidence that the

requested rate is in line with prevailing market rates." Norman, 836 F.2d at 1299. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." Norman, 836 F.2d at 1299.

Plaintiffs argue that Calamusa's and Tunstall's affidavits along with the attached time sheets demonstrate sufficient evidence that the rate requested is within the prevailing market rate. Although the plaintiffs urge that the relevant legal community should include Birmingham, Alabama, because of the collective allegations and nationwide location of the parties, they fail to show a lack of local attorneys who are able to handle the case. See Oden v. Vilsack, 2013 WL 4046456, *5 (S.D. Ala. Aug. 9, 2013) (holding that the relevant legal community for purposes of determining the appropriate hourly rate was Mobile, Alabama even though the attorney was employed at a Birmingham law firm). Accordingly, the relevant legal community is Mobile, Alabama.

In Calamusa's affidavit, he states that he has over 20 years of experience practicing law in the fields of discrimination, wage and hour, civil rights and FLSA actions, while Jent has approximately 15 years of experience practicing law in these same areas. (Doc. 59-1 at 7). Evans has approximately 15 years of experience practicing law in the "areas of securities arbitration/litigation, wage and hour litigation, employment discrimination litigation, corporate/business litigation, and class actions." Id. Slate has over 15 years of experience practicing law in the "areas of product liability, nursing home litigation, vehicle crashworthiness litigation, business litigation, medical malpractice and class actions." (Doc. 59-1 at 9).

5

Tunstall testified in his affidavit that he has practiced civil and criminal litigation for over 21 years and specifically cites two FLSA cases he has handled. (Doc. 62-1, ¶ 2-3). Calamusa claims that he regularly charges clients an hourly rate of $400 for similar work, while Jent regularly charges $325 per hour. (Doc. 59-1 at 9). In Tunstall's affidavit, he testified that he normally charges $300 per hour for similar work. (Doc. 62-1, ¶ 4).

Upon consideration, the court finds that the requested billing rates of $400/hour for attorney Calamusa (20 years experience), $325/hour for attorneys Jent (15 years experience), Slate (15 years experience), Evans (15 years experience) and Tunstall (21 years experience) to be unreasonable and instead finds a rate of $250/hour to be reasonable for each. See Higdon v. Critter Control of the Gulf Coast, LLC, 2013 WL 673462, *5 (S.D. Ala. Feb 25, 2013) (holding that $250 was a reasonable hourly rate in a FLSA case for an attorney with over 20 years of experience including prior representation of clients in employment law and FLSA actions); Vision Bank v. Anderson, 2011 WL 2142786, *3 (S.D. Ala. May 31, 2011) (finding that $250 per hour was a reasonable rate for an attorney with 15 years of experience); Oden, 2013 WL 4046456, at *6 (court in this district recently awarded Calamusa and other attorneys with 15 to 20 years experience an hourly rate of $250 in a fee shifting case).

Unlike the cases relied on by the plaintiffs, no evidence as to the capacity that paralegals Floyes, Allen and Wiggins performed has been presented. See Transmontaigne Product Services, Inc. v. Clark, 2010 WL 3171656, *1 (S.D. Ala.

Aug. 10, 2010) (holding the paralegals' hourly rate of $120 to $130 was reasonable in the Mobile area "considering their respective years of experience"); see also Gulf Coast Asphalt Co. v. Chevron U.S.A., Inc., 2011 WL 612737, *4 (S.D. Ala. Feb. 11, 2011) (finding an hourly rate of $120 reasonable for a paralegal with 11 years of experience). "Absent a showing that a paralegal possesses some extraordinary qualification or expertise," the lodestar rate of $75/hour is routinely awarded in this district. Oden, 2013 WL 4046456, * 7; see SE Prop. Holdings LLC v. 145, LLC, 2012 WL 6681784, *4 (S.D. Ala. Dec. 21, 2012) (citing cases); Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, *4 (S.D. Ala. Sept. 26, 2012) (citing cases).

Accordingly, the court finds that $250/hour for all of the plaintiffs' attorneys and $75/hour for the paralegals to be reasonable lodestar rates in this action.

**2. Reasonable hours expended**

When determining the amount of reasonable hours expended, the court excludes any "excessive, redundant or otherwise unnecessary [hours],…which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Barnes, 168 F.3d at 428 (internal quotes and citations omitted). If faced with these circumstances, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivens, 548 F.3d at 1350.

"Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." Barnes, 168 F.3d at 428. If a fee opponent fails to explain exactly which hours he objects to as unnecessary, the

7

hours will generally be accepted. Defendants argue that the plaintiffs cannot recover fees based on duplicative work billed by five partner-level attorneys or administrative, non-billable tasks.

### a. Reasonableness of hours billed by multiple attorneys

"Redundant hours generally occur where more than one attorney represents a client." Norman, 836 F.2d at 1301-1302. Although "[t]here is nothing inherently unreasonable about a client having multiple attorneys" (Id. at 1302), the hours of multiple attorneys are only recoverable if the fee applicant "satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." Clark, 2010 WL 3171656, at *1; see Barnes, 168 F.3d at 433 (finding that the "presence of four attorneys at a forty minute status conference that did not address the merits of the case was patently excessive"); Wolff v. Royal American Management, Inc., 2012 WL 5303665, * 6 (S.D. Ala. Oct. 25, 2012) (holding that the use of multiple attorneys "led to unreasonable duplication of effort and billing for conferences that were only necessitated by the use of multiple attorneys").

Firstly, the defendants argue that the involvement of five partner-level attorneys was unnecessary. However, as the plaintiffs pointed out, it is not unreasonable for five attorneys to staff this case given the fact that there were six plaintiffs and multiple issues. The hours expended during the short pendency of the action were also reasonable due to the case's potential to become a nationwide collective action involving complex litigation.

Secondly, the defendants argue that the plaintiffs failed to justify duplicative billing for emails, conference calls and review of court filings and discovery.[2] Defendants show that between 17 percent to 40 percent of the attorneys fees sought are based on hours devoted to interoffice and intra-office communication between plaintiffs' counsel. (Doc. 61 at 17). Although these types of billings "are subjected to close scrutiny to prevent abuse,"[3] the fee applicants have demonstrated that in light of the multiple plaintiffs and issues, such communication ensured efficient staffing, coordination of attorney effort, and the like.[4]

Thirdly, the defendants object to hours billed by Tunstall for time spent driving to and attending a settlement conference in Birmingham on June 19, 2013.

---

[2] Most of the plaintiffs' counsel used block-billing entries, so it is difficult to determine how much time in a particular block entry was devoted to each task. See Barnes, 168 F.3d at 429 (noting that block billing "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in [the] litigation").

[3] Lee v. Krystal Co., 918 F.Supp.2d 1261, 1269 (S.D. Ala. 2013); See, e.g. Mogck v. Unum Life Ins. Co. of America, 289 F.Supp.2d 1181, 1194 (S.D.Cal.2003) ("the Court believes that Monson and Horner inappropriately billed for communicating with one another"); In re Latshaw Drilling, LLC, 481 B.R. 765, 799 (Bankr.N.D.Okla.2012) (reducing hours from fee petition where "time records reflect that interoffice conferences (in person, or by phone or email) between and among the professionals billing in this case represent a sizable portion of the total hours billed"); In re Skyport Global Communications, Inc., 450 B.R. 637, 649 (Bankr.S.D.Tex.2011) (excluding from reasonable hours duplicative and/or redundant time entries for intraoffice communications involving multiple attorneys on the same side); In re Wildman, 72 B.R. 700, 710 (Bankr.N.D.Ill.1987) ("Generally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions.").

[4] See, e.g., Oklahoma Natural Gas Co. v. Apache Corp., 355 F.Supp.2d 1246, 1262–63 (N.D.Okla.2004) ("Obviously, lawyers working together on a case must communicate with each other and that communication may spare the client duplication of effort"); In re Frontier Airlines, 74 B.R. 973, 977–78 (Bankr.D.Colo.1987) (where multiple attorneys perform interrelated functions that require "some degree of coordination and communication among them, ... intraoffice conferences among counsel are not only expected but are necessary, and there is no reason why compensation should not be provided for such services").

Specifically, the defendants argue that Tunstall's travel to the thirty-minute settlement conference also attended by Slate and Jent and at which plaintiffs' counsel was not prepared to discuss settlement was unreasonable. The plaintiffs contend that Tunstall's presence was warranted because he initiated the case and had the longest relationship with the clients. The plaintiffs also argue that the brevity of the meeting stemmed from the defendants' unwillingness to participate in negotiations on a collective basis and failure to provide all documentation necessary to properly evaluate the case. Upon consideration, the court finds that the hours Tunstall spent driving to Birmingham where all the other attorneys were located and attending the settlement conference was reasonable.

### b. Hours related to administrative tasks

"As to reasonable paralegal fees, only time spent performing work traditionally performed by attorneys will be compensated." Branch Banking and Trust Co. v. Imagine CBQ, LLC, 2012 WL 1987830, at *3 (S.D. Ala. June 4, 2012) (citing Allen v. U.S. Steel Corp, 665 F.2d 689, 697 (5th Cir. 1982)). "Otherwise, paralegal expenses are separately unrecoverable overhead expenses." Allen, 665 F.2d at 697. "Purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." Allen v. McClain EZ Pack of Alabama, Inc., 2005 WL 1926636, *3 (S.D. Ala. 2005) (quoting Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); see Whitney Bank v. Davis-Jeffries-Hunold, Inc., 2012 WL 5470131, * 7 (S.D. Ala. Nov. 9, 2012) (holding that time spent by paralegals "receiving, reviewing, and indexing

10

documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition). Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routing calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions. See Allen v. McClain EZ Pack of Alabama, Inc. 665 F.2d at 697; Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, *5; Oden, 2013 WL 4046456, * 8.

The defendants argue that the plaintiffs' billing statement reflects time spent by paralegals Floyes, Allen and Wiggins on clerical work. Floyes billed a total of 59.35 hours. Allen billed a total of 0.4 hours. Wiggins billed a total of 10.05 hours. As to Floyes, the defendants point out 30.5 hours of the 59.35 hours billed, which they believe were devoted to clerical tasks. The plaintiffs object to four of the occasions cited by the defendants arguing that Floyes functioned more as an associate attorney than a secretary as she spent these hours meeting with clients to evaluate the case and gathering information necessary to draft answers to interrogatories:

| Date | Description | Hours |
|------|-------------|-------|
| 8/15/12 | Intake with Denise Clark/Copies of Document | 2.0 |
| 11/28/12 | Office meeting with Jennifer Cormier regarding the possible new case/Intake sheet/Signed fee | 2.0 |

11

| | agreement/Took down notes regarding her job | |
|---|---|---|
| 5/21/13 | As part of large block billing entry, Floyes includes time for…"Reviewed and printed Plaintiff's Amended Complaint and Response to Defendants Motion to Dismiss." | 6.0 |
| 6/17/ 13 | Reviewed and printed defendants summary (sic) of wages and production of payroll records/Office meeting with clients, Wanda Williams, Denise Clark and Jennifer Cormier regarding defendants summary (sic) of wages and production of payroll wages | 5.5 |

Upon consideration, the court finds that a total of 13.4 hours of the 30.5 hours of block entries objected to by the defendants--1.5 hours billed on 8/15/12, 2.0 hours billed on 11/28/12, 5.9 hours billed on 5/21/13 and 4.0 hours billed on 6/17/12-- are recoverable as non-clerical work performed by Foyles.[5] Based on the remaining 17.1 hours spent by Floyes on nonbillable clerical tasks, the amount of billable

---

[5] It seems that Floyes attended the client intake meeting with Tunstall on 8/15/12. Tunstall billed 1.5 hours for this meeting, so it appears that 0.5 hours of Floyes' 2.0 hour block entry can be attributed to the intake of the client and copying of documents. Similarly, it seems that Floyes attended the client intake meeting with Tunstall on 11/28/12. Tunstall billed 2.0 hours for this meeting, so it appears that Floyes' entire 2.0 hour block entry can also be attributed to this non-clerical task. The court concludes that Floyes devoted only 0.1 hours of the 6.0 hour block entry on 5/21/13 to clerical tasks resulting in 5.9 billable hours for that day. Lastly, it seems Floyes attend the 6/17/13 client meeting with Tunstall. Tunstall recorded a four-hour entry for this meeting, so it appears 1.5 hours of Floyes 5.5 hour block entry is attributed to Floyes' printing the payroll records. The sum of these billable hours is 13.4 hours.

12

hours attributed to Floyes is reduced from 59.35 hours to 42.25 hours.

The defendants also argue that the entire 0.4 hours billed by Allen and 6.15 hours of the 10.5 hours billed by Wiggins were spent on clerical tasks. The plaintiffs' only objection is that Wiggins spent the majority of the time billed on non-secretarial tasks such as preparing the complaint, handling service issues and calculating expenses for the Bill of Costs. However, the fee application billing descriptions do not reflect that Wiggins handled any of these tasks beyond an administrative level. Thus, the amount of hours recoverable by Wiggins is reduced from 10.05 hours to 3.9 hours and the amount of hours recoverable by Allen is reduced from 0.4 hours to 0.0 hours.

### 3. The Lodestar Figure

Accordingly, the court's initial lodestar calculation is:

Calamusa    28 hours        x $250/hour = $7,000.00

Jent        45 hours        x $250/hour = $11,250.00

Tunstall    43 hours        x $250/hour = $10,750.00

Evans       26.9 hours      x $250/hour = $6,725.00

Slate       20.89 hours[6]  x $250/hour = $5,222.50

Wiggins     3.9 hours       x $75/hour  = $292.50

Floyes      42.25 hours     x $75/hour  = $3,168.75

---

[6] The fee petition reflects that Slate spent 8.3 hours on May 11 and May 14 traveling to Mobile to meet with Nikki Doggett. (Doc. 59-4 at 16). Doggett did not become a plaintiff in this matter and was not mentioned in the plaintiffs' complaint. The plaintiffs' have failed to show their entitlement to these pre-litigation fees. See Norman, 836 F.2d at 1302 (finding that when calculating attorney's fees the court should exclude "time spent on discrete and unsuccessful claims"). Thus, the number of hours reasonably expended by Slate is reduced from 29.19 hours to 20.89 hours.

13

Allen          0.0 hours     x $75/hour    = $0.00

          **Total    = $ 44,408.75**

"After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained." Norman, 836 F.2d at 1302. "If the result was excellent, then the court should compensate for all hours reasonably expended." Id. Here, the court finds that the lodestar fee adequately reflects the experience of the attorneys and the complexity of the litigation, such that no modification or adjustment of that figure is appropriate. Accordingly, the reasonable attorneys' fee award in this case will be fixed at $44,408.75.

**C. Costs and Expenses**

  In a FLSA action, allowable costs are set forth in 28 U.S.C. § 1920. See 28 U.S.C. § 1920. These costs include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828. See 28 U.S.C. § 1920. In their reply brief, the plaintiffs acknowledge the authority of 28 U.S.C. § 1920 and agree to seek costs of $696.21, which was the amount submitted in their Bill of Costs previously filed with the court.

## CONCLUSION

It is **ORDERED** that the plaintiffs' motion for attorneys' fees (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**, such that plaintiffs are awarded from the defendants $44,408.75 in attorneys' fees and $696.21 in costs.

Final judgment shall be entered by a separate document.

**DONE** and **ORDERED** this 11th day of December, 2013.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE